```
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
 2                        WESTERN DIVISION

 3

 4   UNITED STATES OF AMERICA,-        Docket No. 1:07-cr-647
                              -
 5      Plaintiff,           -        Toledo, Ohio
                              -        November 17, 2008
 6         v.                 -        Telephone Conference
                              -
 7   ZUBAIR AHMED, and       -
     KHALEEL AHMED,          -
 8                            -
        Defendants.          -
 9   ------------------------------

10           TRANSCRIPT OF TELEPHONE CONFERENCE
             BEFORE THE HONORABLE JAMES G. CARR
11           UNITED STATES DISTRICT CHIEF JUDGE.

12   APPEARANCES:

13   For the Plaintiffs:  United States Attorneys' Office
                          By:  Thomas E. Getz
14                        801 Superior Avenue, W
                          Cleveland, OH 44113
15                        (216) 622-3840

16                        U.S. Department of Justice
                          By:  Gregg N. Sofer
17                        816 Congress Avenue
                          Austin, TX 78701
18                        (512) 916-5858

19   For the Defendant:  Kirkland & Ellis
     Khaleel Ahmed        By:  Alyssa A. Qualls
20                             Michael Slade
                          Suite 5400
21                        200 East Randolph Drive
                          Chicago, IL 60601
22                        (312) 861-2000

23

24

25
```

```
 1   For the Defendant:    Friedman & Gilbert
     Zubair A. Ahmed       By:  Terry H. Gilbert
 2                         600 Standard Building
                           1370 Ontario Street
 3                         Cleveland, OH 44113
                           (216) 241-1430
 4

 5   Court Reporter:       Tracy L. Spore, RMR, CRR
                           1716 Spielbusch Avenue
 6                         Toledo, Ohio 43624
                           (419) 243-3607
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by mechanical stenography,
25   transcript produced by notereading.
```

| | | |
|---|---|---|
| 09:31:20 | 1 | (Commence at 9:31 a.m.) |
| 09:31:20 | 2 | THE COURT:  Let me say this is the case of |
| 09:31:30 | 3 | United States of America versus Zubair and Khaleel |
| 09:31:32 | 4 | Ahmed, bears docket 1:07-CR-647.  And who's on the |
| 09:31:40 | 5 | phone for the government? |
| 09:31:42 | 6 | MR. SOFER:  Gregg Sofer for the government. |
| 09:31:44 | 7 | MR. GETZ:  Tom Getz for the government. |
| 09:31:46 | 8 | THE COURT:  Okay.  And then for Zubair |
| 09:31:52 | 9 | Ahmed? |
| 09:31:52 | 10 | MR. GILBERT:  Terry Gilbert. |
| 09:31:54 | 11 | THE COURT:  Is Ms. Whitaker with you? |
| 09:31:58 | 12 | MR. GILBERT:  Ms. Whitaker is not here |
| 09:32:00 | 13 | today. |
| 09:32:00 | 14 | THE COURT:  For Khaleel? |
| 09:32:00 | 15 | MR. SLADE:  Mike Slade and Alyssa Qualls are |
| 09:32:04 | 16 | here. |
| 09:32:04 | 17 | THE COURT:  And Mr. Sieve is not with you? |
| 09:32:06 | 18 | MR. SLADE:  That's correct; it will just be |
| 09:32:08 | 19 | us this morning. |
| 09:32:10 | 20 | THE COURT:  Okay.  I got an e-mail, or |
| 09:32:16 | 21 | actually Amy got an e-mail which she gave to me about |
| 09:32:22 | 22 | setting a hearing on the suppression motions.  I |
| 09:32:24 | 23 | thought I had done that, didn't I? |
| 09:32:26 | 24 | MR. SOFER:  You did, Judge.  This is Greg |
| 09:32:28 | 25 | Sofer.  I guess that's a good place for us to start |

09:32:32  1    this morning.   We have two requests with respect to the

09:32:34  2    hearings.   You did set a date.   You set a date of

09:32:38  3    December 1.   The first request is to move that date

09:32:42  4    back about a week or so, if Your Honor would be willing

09:32:48  5    to.   And there are two reasons for that.   One is a

09:32:54  6    personal one for me; my wife is scheduled to have

09:32:56  7    surgery on that day.

09:32:58  8              THE COURT:  Okay.  Let me just interrupt.

09:33:00  9    It looks as though I could set them for the 9th and

09:33:04  10   10th, if that's okay with everybody else.

09:33:06  11            MR. GILBERT:  Well, here's my problem,

09:33:10  12   Judge.   If you could talk to Judge Gaughan, she is

09:33:14  13   adamant about me going to trial on the 8th on a civil

09:33:18  14   rights case.

09:33:18  15            THE COURT:  Okay.

09:33:20  16            MR. GILBERT:  And, in fact, I had asked her

09:33:22  17   about the possibility of continuing it for other

09:33:26  18   reasons, and she says no way.   She cleared her calendar

09:33:34  19   for that.   I have no problem with Mr. Sofer's request

09:33:40  20   if you can deal with my problem with Judge Gaughan.

09:33:56  21            I don't know how you feel about it, Mike and

09:33:58  22   Alyssa.

09:34:00  23            MR. SLADE:  We're fine with it, Terry and

09:34:02  24   Greg.

09:34:08  25            MR. SOFER:  What about, Mr. Sofer -- let me

09:34:10    1    ask you this:  My problem is, and there is nothing I can

09:34:12    2    do about this, I'm sitting on the circuit on the 11th

09:34:16    3    and 12th.  So --

09:34:20    4             Well, excuse me.  Mr. Sofer, let me ask you

09:34:28    5    this:  What about later that same week?  In other words,

09:34:36    6    I'm available all day on the 3rd; the 4th I have to be

09:34:40    7    in Cleveland in the morning for a CLE, but actually --

09:34:52    8    and then the 5th I'm available all day as well -- well,

09:34:56    9    I've got a couple of things in the afternoon which

09:35:00   10    aren't -- so I could do it.  Unfortunately, it would

09:35:06   11    have to be interrupted.  I have to be in Cleveland at

09:35:10   12    9:00 to sort of welcome everybody, and then I'm in a

09:35:14   13    program from 12:00 to 2:00 on Thursday, the 4th.

09:35:20   14             MR. SOFER:  I think, Judge, the problem with

09:35:20   15    that for me is --

09:35:26   16             THE COURT:  You're in Texas.

09:35:28   17             MR. SOFER:  That's not a problem, per se,

09:35:30   18    but the biggest problem, though, is my wife's surgery

09:35:32   19    means she basically will be off her feet, will have to

09:35:36   20    be off her feet for probably a couple days, and then

09:35:38   21    can't really do anything for at least the remainder of

09:35:42   22    that week, and basically I'm going to have to take the

09:35:46   23    week off of work and take care of our rowdy children.

09:35:52   24             MR. TERESINSKI:  Jerry Teresinski just

09:35:58   25    joined.

09:35:58  1            MR. SOFER:  Unless Jerry's offering to come

09:36:02  2   to my house and take care of my children.

09:36:04  3            MR. TERESINSKI:  I'd be honored to take care

09:36:06  4   of your children.

09:36:08  5            MR. SOFER:  That's my problem.  Not knowing

09:36:10  6   what her physical state's going to be, I can't really

09:36:12  7   leave my house to her if she's not capable of picking

09:36:16  8   things up and moving around.  So that -- my preference

09:36:20  9   would be to try to get that week at home.  If Your

09:36:24  10  Honor just can't do it and/or counsel have a problem

09:36:30  11  with this, we could do it -- you could schedule it for

09:36:34  12  later in the week; I'd do my best to be there.  But I

09:36:38  13  think as a result of my participation in some of the

09:36:40  14  motions and some of the issues, it causes problems for

09:36:44  15  the government if we can't move it back a little bit.  I

09:36:48  16  don't know how counsel would feel about the next week.

09:36:50  17           One thing I would say, Judge, is our second

09:36:52  18  request may be linked to this first request, which is to

09:36:56  19  say we don't think hearings are necessary for a number

09:37:02  20  of issues that have been raised.  We've argued this in

09:37:04  21  our motions.  And given the fact that a number of our

09:37:08  22  witnesses are coming from out of town, rather than have

09:37:14  23  this amorphus situation --

09:37:16  24           THE COURT:  That makes sense.  Let's go

09:37:18  25  through the motions and see where we get.

09:37:22  1          MR. SOFER:  Okay.

09:37:22  2          THE COURT:  I was actually typing an e-mail

09:37:26  3  to Judge Gaughan, but --

09:37:30  4          MR. SLADE:  Mr. Sofer, I thought we had

09:37:32  5  talked about this the last time, but I thought we

09:37:34  6  thought the only motion that we needed witnesses for was

09:37:36  7  Zubair's motion to suppress the items found in the

09:37:42  8  basement of Khaleel's house.   Am I wrong about that?

09:37:48  9          THE COURT:  No.  No.  I think we need a

09:37:50  10  hearing on --

09:37:56  11          MR. GILBERT:  On the statements?

09:37:56  12          THE COURT:  That's what I was going to say.

09:37:58  13  I think we need a hearing certainly on Zubair's motion

09:38:02  14  to suppress statements.

09:38:04  15          MR. SOFER:  And, Your Honor, we don't think

09:38:06  16  there are issues of fact for -- at least from the papers

09:38:12  17  that have been submitted -- for portions of that motion.

09:38:16  18  So there were numerous statements made, and there are

09:38:22  19  arguments with respect to each of those statements.

09:38:24  20          These, by the way, include the proffer

09:38:26  21  sessions which counsel just filed a motion recently

09:38:32  22  withdrawing a particular argument with respect to the

09:38:34  23  motion -- with respect to his motion to suppress

09:38:36  24  statements made during the course of the proffer

09:38:40  25  sessions.  But I guess I think that you're right, Your

09:38:44  1  Honor, that one's the one that we'd like to focus Your

09:38:46  2  Honor's attention on to at least read the both sets of

09:38:52  3  papers to tell us which of these statements the Court

09:38:56  4  believes there is a factual issue raised which requires

09:39:02  5  either us or the defense to call witnesses on.  Now,

09:39:04  6  unless something changes, counsel may have witnesses

09:39:08  7  that they want to call or that they have not mentioned

09:39:12  8  in their papers or have arguments that they've not

09:39:14  9  mentioned in their papers.  But barring that, we think

09:39:18  10  you could decide as to some of those statements that a

09:39:20  11  hearing is not necessary, or there may be a hearing

09:39:26  12  necessary.

09:39:26  13       The one that's most complicated, I think,

09:39:30  14  was the proffer sessions, which I think is a train wreck

09:39:36  15  waiting to happen, Your Honor, to use a colloquialism,

09:39:40  16  unless we deal with this pretrial.  And from what I

09:39:44  17  understand -- and I must confess, I have not read

09:39:46  18  counsel's -- I've been unable to read counsel's motion

09:39:50  19  withdrawing the argument.  But I've been told that the

09:39:54  20  papers say something to the effect that they're

09:39:56  21  withdrawing the ineffective assistance claim but relying

09:39:58  22  on the other arguments made in the motion.  We don't see

09:40:02  23  any other arguments made in that motion.  And we think

09:40:06  24  that once this issue's been raised now of ineffective

09:40:10  25  assistance, and the Court -- for the proffer, that it's

09:40:14  1  hard to put this genie back in the bottle.

09:40:18  2          So I guess again, Your Honor, our request is

09:40:20  3  that if we can set a hearing date today that I can

09:40:24  4  participate in, I would most appreciate it.  At the

09:40:28  5  very least what we'd like to try to ask the Court to do

09:40:30  6  is to take a look at the motion to suppress statements

09:40:34  7  and give us at least a -- some preliminary guidance, if

09:40:40  8  not a decision, as to whether or not witnesses need to

09:40:46  9  be called in the hearing.

09:40:48  10          THE COURT:  Hold on one minute, please.

09:40:48  11  Okay.  Just a second, please.

09:40:56  12          MR. GILBERT:  Maybe I can get a word in

09:40:58  13  edgewise.

09:40:58  14          THE COURT:  Just a second, please.  I'm

09:42:06  15  typing an e-mail to Judge Gaughan.  I'd like to get her

09:42:12  16  to cooperate.  Then we'll go through each of the

09:42:16  17  motions.

09:42:18  18          MR. GILBERT:  Can I please respond to --

09:42:22  19          THE COURT:  No.  Let me type the memo,

09:42:26  20  Terry.

09:43:36  21          I'm sending her that e-mail right now.

09:43:44  22          Let's go through, in sort of no particular

09:43:48  23  order, just the order in which I reviewed them over the

09:43:52  24  weekend, or the order in which the stack was in front of

09:43:54  25  me.  I just don't remember what I did on the

09:43:58  1  government's motion to take the deposition.   That's

09:44:04  2  motion Number 72.   Government's motion to take the

09:44:06  3  pretrial deposition.   I know we talked about this last

09:44:10  4  week or shortly a while ago.

09:44:12  5          MR. SLADE:  Your Honor, I think we're

09:44:14  6  waiting for Your Honor's ruling.  That's been fully

09:44:16  7  briefed.

09:44:18  8          MR. SOFER:  The government concurs.

09:44:20  9          THE COURT:  Okay.  Fine.   Sorry.  I would

09:44:24  10  have tried to do that this weekend.   I'll try to do

09:44:26  11  that quite promptly.

09:44:28  12          MR. GILBERT:  Thank you, Your Honor.

09:44:30  13          THE COURT:  Okay.  Now, with regard to

09:44:40  14  motion number 56, the FISA motion that's been filed

09:44:48  15  under seal.   Has there been a government response to

09:44:50  16  that yet?   I did not have it.

09:44:52  17          MR. SOFER:  Our response is due -- you may

09:44:54  18  recall, Your Honor, we asked specifically for a little

09:44:56  19  more time for that one given the complexities.   And I

09:45:00  20  think Your Honor said the 20th of this month for us to

09:45:06  21  file a response, and we anticipate we will file our

09:45:08  22  response in a timely fashion.

09:45:08  23          THE COURT:  And then I assume I also have a

09:45:12  24  time for reply?

09:45:14  25          MR. SLADE:  That's correct, Your Honor.  Our

09:45:14  1    reply is due on December 15.

09:45:32  2          THE COURT:  Now, in that motion on page 17

09:45:36  3    at Note 9 you request disclosure of any warrantless

09:45:44  4    electronic surveillance.   I think that's on page 17.

09:45:52  5          Will the government be responding to that

09:45:54  6    request?  And if so, do you know what the response is?

09:45:58  7          MR. SOFER:  I think, Your Honor, we actually

09:46:00  8    did when this was last briefed.  I believe that that --

09:46:08  9    that the government filed a response to that particular

09:46:12  10   issue.  Certainly we will respond to it again if, in

09:46:18  11   fact -- we may reference our -- this whole motion, you

09:46:22  12   may recall, Your Honor, as with a number of these

09:46:24  13   motions, this is sort of the second time through.   And

09:46:26  14   it is possible we would reference either documents filed

09:46:30  15   or motion responses from previous responses, although

09:46:36  16   we're responding anew to all of these motions.

09:46:40  17          THE COURT:  Okay.  I would ask that if you

09:46:44  18   could do so, rather than referring to other pleadings or

09:46:52  19   prior responses, if you could basically, even if it's

09:46:58  20   simply incorporating all the same text, which I assume

09:47:02  21   you have an electronic version, if you could do it in a

09:47:06  22   single document.   It's just going to be easier for me

09:47:10  23   as I go through these if I've got a motion, a single

09:47:14  24   opposition, rather than one that incorporates by

09:47:18  25   reference one, two, three, or four other previously

09:47:22   1    filed pleadings.

09:47:24   2            MR. SOFER:  We will do that, Judge.   The

09:47:26   3    only thing I can think of where that may be a

09:47:28   4    complication is the Court has some attachments to this

09:47:32   5    previous motion that have -- that only the Court has.

09:47:38   6    At least that's my understanding.

09:47:42   7            THE COURT:  That's fine.   Then you can --

09:47:42   8    in that case, the main thing is if you give Amy a head's

09:47:46   9    up so she can retrieve that stuff, and when she

09:47:50  10    assembles the motions for me to start working on, she

09:47:54  11    can collect that and put them together.   That's fine.

09:47:58  12            MR. SOFER:  That's easy for us to do.   As I

09:48:00  13    say, there will be a very small --

09:48:08  14            THE COURT:  Okay.  Now, I'm looking at

09:48:16  15    Khaleel's motion for severance.

09:48:20  16            MR. SLADE:  Your Honor, our reply brief is

09:48:22  17    due today.   It's going to be filed shortly, then it

09:48:24  18    will be fully briefed and ready for Your Honor's

09:48:28  19    decision.

09:48:28  20            THE COURT:  Who's speaking, please?

09:48:30  21            MR. SLADE:  I apologize.   Mike Slade for

09:48:32  22    Khaleel.   I believe, Your Honor, there was some thought

09:48:34  23    to doing oral argument on some of these motions the same

09:48:38  24    day that we were going to have the hearings.   I'm not

09:48:42  25    sure what's going to happen to that given that we're

13

09:48:46  1    going to move the dates.

09:48:48  2             THE COURT:  Well, let me see if she's gotten

09:48:58  3    back to me.  I don't know if she has or not.  I don't

09:49:02  4    expect that she will have.  I have no problem, provided

09:49:18  5    we have time.  Hold on one second.  Now, this is the

09:49:32  6    motion I think, Mr. Sofer, that you were referring to at

09:49:36  7    least in part -- no, this is -- yeah.

09:49:40  8             MR. SOFER:  The severance motion, Your

09:49:42  9    Honor.

09:49:42  10            THE COURT:  The severance motion is

09:49:44  11   essentially a Bruton-type motion, right?

09:49:46  12            MR. SOFER:  Well, there's multiple grounds,

09:49:50  13   Your Honor.  One that the government would concede there

09:49:50  14   might be an issue on is the Bruton one.  And we think

09:49:56  15   that can be resolved the same way -- under the same sort

09:50:00  16   of mechanism that we resolved it in the Amawi case.

09:50:04  17            THE COURT:  You have not yet submitted a

09:50:16  18   proposed redacted version, I take it?

09:50:18  19            MR. SOFER:  No.  And that's for a number of

09:50:22  20   reasons.  One is we don't -- the whole concept behind

09:50:30  21   the notion that there would be a Bruton problem begs --

09:50:34  22   goes back to begging the question as to whether the

09:50:36  23   proffer itself would be admissible.  And since at least

09:50:42  24   at the time of this motion there was a motion to

09:50:44  25   suppress the proffer statements.  And I take it even

09:50:48 1 though Mr. Gilbert hasn't yet had an opportunity to get

09:50:50 2 a word in edgewise, that even though he's withdrawn a

09:50:56 3 portion of that motion, he still is seeking suppression

09:50:58 4 of the proffered statement.  We thought it was putting

09:51:00 5 the cart somewhat before the horse.

09:51:02 6           THE COURT:  Let me ask you this:  Do you

09:51:06 7 think that you could provide -- prepare and provide the

09:51:10 8 proposed redacted version before whatever date it is we

09:51:14 9 have the motions heard on?

09:51:18 10          MR. SOFER:  Absolutely we could, Judge.

09:51:20 11          THE COURT:  Why don't we do that.

09:52:00 12          Okay.  Government to provide proposed

09:52:06 13 redacted version of Defendant Zubair Ahmed's proffer

09:52:16 14 statement one week prior to date for hearing on pending

09:52:28 15 motions.  Okay.

09:52:28 16          MR. SOFER:  Not a problem, Judge.

09:52:30 17          THE COURT:  And then we can -- Terry

09:52:36 18 Gilbert, then we can take up -- I would expect to

09:52:40 19 address in one way or another whatever needs to be

09:52:42 20 talked about on the hearing date.  Okay?

09:52:46 21          MR. GILBERT:  Right.  Let me just throw

09:52:50 22 this out to clarify the status of those motions, if you

09:52:54 23 are interested in hearing about it now, Judge.

09:52:56 24          THE COURT:  I am.  Go ahead.

09:52:58 25          MR. GILBERT:  It is true that we withdrew

09:53:00  1  the argument on the ineffective assistance claim, which

09:53:06  2  basically means that the conversations that Zubair had

09:53:08  3  with counsel that he had at the time when the proffers

09:53:16  4  were made as to state of mind and volunteerism and that

09:53:24  5  kind of thing, we will not pursue.   This does not

09:53:28  6  eliminate the suppression issue on the proffers because

09:53:32  7  there were interviews that occurred prior to that time

09:53:36  8  without counsel with Zubair.   And as you look through

09:53:40  9  our motion, we claim that there were misrepresentations

09:53:44  10  made by the government agents.

09:53:48  11           THE COURT:  And as to that motion -- is that

09:53:52  12  part of the same motion?   I just can't recall.

09:53:56  13           MR. SOFER:  No, that motion is the motion to

09:53:58  14  suppress statements.

09:54:00  15           MR. GILBERT:  It's all part of one motion.

09:54:02  16           THE COURT:  It's all included in one motion.

09:54:06  17           MR. GILBERT:  And obviously I think we need

09:54:08  18  those agents there.

09:54:08  19           THE COURT:  Excuse me.   I agree with you.

09:54:10  20  I think that any agent who participated in those

09:54:14  21  sessions should be available to testify.

09:54:16  22           MR. SOFER:  Before the Court makes that

09:54:18  23  determination, I would just ask that you read our legal

09:54:22  24  response, which basically argues even if those

09:54:28  25  representations were made, that there is no -- I think

09:54:34  1    our argument is, again, even assuming that those

09:54:38  2    misrepresentations were made, that there is no basis for

09:54:42  3    suppression.

09:54:42  4              THE COURT:  Well, I have read them.   And

09:54:46  5    quite candidly -- I have read them; I've read all the

09:54:50  6    motions and the oppositions.   I've read everything that

09:54:58  7    was in the stack, okay, thus far.   And quite candidly,

09:55:04  8    I prefer to err on the side of caution and go ahead and

09:55:08  9    have a record made.   I realize that I'm fully familiar

09:55:12  10   with the general rule that deceit or trickery on the

09:55:16  11   part of the government in advance of procuring evidence,

09:55:22  12   whether it's physical evidence or statements, generally

09:55:26  13   is not a basis for suppression.   But I do think that

09:55:32  14   given the nature of the case and its importance and the

09:55:34  15   potential consequences of a conviction that it's

09:55:38  16   appropriate to exercise some caution and to conduct a

09:55:44  17   hearing.

09:55:48  18             MR. SOFER:  But, Your Honor, again, I don't

09:55:50  19   mean to be argumentative about this and I know from our

09:55:54  20   prior experience you'll tell me to be quiet when I need

09:55:56  21   to be, but if we call the agents and the agents get up

09:56:00  22   there and just say, Yes, the things that were said in

09:56:06  23   the defense papers are accurate.   And I'm not saying

09:56:10  24   that this necessarily is what they would say, but if

09:56:12  25   that's their testimony, and that issue's already been

09:56:16 1  briefed, it just seems -- you'll pardon me for saying

09:56:22 2  this; it seems like a bit of a waste of everybody's time

09:56:26 3  if this ultimately is a legal question, not a fact one.

09:56:32 4           THE COURT:  No, I have made my mind up on

09:56:34 5  that.  I want to develop a factual record.

09:56:36 6           MR. SOFER:  Very well.

09:56:38 7           THE COURT:  Also, for example, I don't --

09:56:40 8  and that is something that easily can be addressed in

09:56:42 9  terms of the, quote, notice that was provided by the

09:56:48 10  forms that were received.  I don't think the record

09:56:50 11  indicates when those -- when Zubair actually got the

09:56:56 12  various forms about -- that are included as exhibits

09:57:06 13  from ICE or INS, whoever it was.

09:57:20 14           (Discussion had off the record.)

09:57:34 15           THE COURT:  I just got an e-mail from Judge

09:57:38 16  Gaughan.   Hold on one minute.

09:57:50 17           (Discussion had off the record.)

09:57:54 18           THE COURT:  She asked whether I can do it

09:57:56 19  the week of the 14th.   But the problem is with that,

09:58:00 20  I've got hearings in -- how many people in Ruiz?   I've

09:58:06 21  got pretrial hearings in a 15-defendant drug case set

09:58:10 22  that week.   And then I'm gone the next two weeks.   So

09:58:14 23  I'm just going to tell her.   So she's not going to be

09:58:16 24  happy, but that's too bad.

09:58:28 25           So on motion 62, okay, I assume that you can

| | | |
|---|---|---|
| 09:58:50 | 1 | give me that information about when Zubair would have |
| 09:58:52 | 2 | gotten those or whether he did, in fact, get those |
| 09:58:54 | 3 | notices and all that. |
| 09:58:56 | 4 | MR. SOFER:  Yes, Judge.  We're still stuck |
| 09:59:02 | 5 | with, for instance, the question then on the proffers; |
| 09:59:06 | 6 | if counsel is looking to attach this argument |
| 09:59:10 | 7 | essentially and bootstrap it to the argument that the |
| 09:59:14 | 8 | proffers then are somehow tainted by pre-proffer |
| 09:59:20 | 9 | interviews by government agents -- |
| 09:59:22 | 10 | THE COURT:  Mr. Sofer, can I interrupt for a |
| 09:59:24 | 11 | moment?  Judge Gaughan is on the other phone.  Half a |
| 09:59:28 | 12 | minute, please. |
| 10:01:54 | 13 | (Discussion had off the record.) |
| 10:01:56 | 14 | THE COURT:  Let's go back to where we |
| 10:01:58 | 15 | started.  I will postpone the hearing until the 9th and |
| 10:02:00 | 16 | 10th.  Okay.  Terry, Judge Gaughan's office will be in |
| 10:02:08 | 17 | touch with you about it. |
| 10:02:10 | 18 | MR. GILBERT:  Thank you, Judge. |
| 10:02:10 | 19 | THE COURT:  No problem. |
| 10:02:10 | 20 | MR. GILBERT:  I just hope she doesn't think |
| 10:02:12 | 21 | that I did something. |
| 10:02:14 | 22 | THE COURT:  No, I made very clear. |
| 10:02:16 | 23 | MR. GILBERT:  Because I actually had talked |
| 10:02:18 | 24 | about getting it continued for other reasons. |
| 10:02:20 | 25 | THE COURT:  No, that fine. |

| | | |
|---|---|---|
| 10:02:22 | 1 | MR. GILBERT:  And I was then prepared to go |
| 10:02:24 | 2 | forward. |
| 10:02:24 | 3 | THE COURT:  I made it very clear.  In my |
| 10:02:26 | 4 | e-mail I said that lead government counsel had these |
| 10:02:32 | 5 | hearings set, and lead government counsel advised me his |
| 10:02:34 | 6 | wife is having surgery, and he has to be home that week |
| 10:02:38 | 7 | to tend to her and her children. |
| 10:02:40 | 8 | MR. SOFER:  Your Honor, to you and to |
| 10:02:42 | 9 | counsel, I appreciate your flexibility. |
| 10:02:46 | 10 | MR. GILBERT:  Well, you did me a favor. |
| 10:02:48 | 11 | THE COURT:  No, Terry, we don't want to put |
| 10:02:50 | 12 | that on the record.  Off the record. |
| 10:02:52 | 13 | (Discussion had off the record.) |
| 10:02:58 | 14 | MR. SLADE:  Your Honor, what time are we |
| 10:03:44 | 15 | going start on the 9th? |
| 10:03:46 | 16 | THE COURT:  I'd like to start at 8:30 if we |
| 10:03:50 | 17 | can.  That's normally when I start hearings and stuff. |
| 10:03:56 | 18 | MR. SOFER:  We will keep the 10th open too. |
| 10:03:58 | 19 | THE COURT:  Yeah.  I have to leave, though. |
| 10:04:02 | 20 | I must leave about 2:00 in the afternoon on the 10th, if |
| 10:04:06 | 21 | not sooner.  So we're going to have to be done.  That |
| 10:04:10 | 22 | means, depending -- if we have to go late into the |
| 10:04:14 | 23 | evening on the 1st day, the 9th, we will.  Okay. |
| 10:04:40 | 24 | Because I'm planning to meet with a Judge Wednesday |
| 10:04:44 | 25 | evening with whom I'm hearing arguments on that Thursday |

10:04:52    1    and Friday.

10:04:56    2                And I'll have -- government to propose

10:04:58    3    redacted version of Zubair's proffered statement on or

10:05:04    4    before December 2.    Okay?

10:05:06    5                MR. SOFER:  Very well, Judge.

10:05:08    6                This proffer, though, as I was saying, Your

10:05:12    7    Honor, is, I think, probably one of the more complicated

10:05:18    8    issues here.    And we believe that if counsel continues

10:05:24    9    to argue that the proffer should be suppressed, that

10:05:26   10    that makes Mr. Collins, Zubair Ahmed's former attorney,

10:05:32   11    a witness in this case.    Even if he's going to say that

10:05:38   12    the only -- his only basis for arguing the suppression

10:05:42   13    of the proffer is previous misrepresentations made by

10:05:48   14    government agents, it still then begs the question

10:05:52   15    whether or not Mr. Ahmed, that is, Zubair Ahmed, when he

10:05:58   16    sat in a room with his lawyer, whether those statements

10:06:00   17    should be suppressed, it still opens that door, it seems

10:06:04   18    to us, in terms of understanding then the appearance of

10:06:12   19    attorney/client privilege, to understand was his will

10:06:16   20    overborne at that point, or was there any other legal

10:06:18   21    basis for suppression?  There's just no way to excise

10:06:26   22    that piece of the equation, it seems to the government.

10:06:30   23    And we need to know whether or not we are going to be

10:06:34   24    given, A, the ability to speak with his previous lawyer

10:06:38   25    on this issue, or call him as a witness.  We would

| | |
|---|---|
| 10:06:44 | 1 |
| 10:06:46 | 2 |
| 10:06:48 | 3 |
| 10:06:50 | 4 |
| 10:07:00 | 5 |
| 10:07:08 | 6 |
| 10:07:10 | 7 |
| 10:07:14 | 8 |
| 10:07:22 | 9 |
| 10:07:26 | 10 |
| 10:07:34 | 11 |
| 10:07:36 | 12 |
| 10:07:38 | 13 |
| 10:07:40 | 14 |
| 10:07:44 | 15 |
| 10:07:50 | 16 |
| 10:07:56 | 17 |
| 10:08:00 | 18 |
| 10:08:08 | 19 |
| 10:08:12 | 20 |
| 10:08:16 | 21 |
| 10:08:24 | 22 |
| 10:08:26 | 23 |
| 10:08:30 | 24 |
| 10:08:36 | 25 |

probably call him as a witness for the government to
say, like --

THE COURT:  Let me -- I would tend to agree
that to the extent that Zubair is contending that there
was some defect in the proffer process, particularly to
the extent that he would contend that his participation
was not voluntary or he was somehow misinformed or
misled by the government, that because he had counsel,
even though he no longer may directly be challenging
counsel's adequacy, he at least is doing so indirectly.

And there's some noise in the background.
It sounds like the wind or somebody's breathing.  It's
hard for Tracy to pick up.

So anyway, I certainly am inclined to agree
that if we're going to proceed on the challenge to the
proffer in terms of its actual taking, I think it's
necessary for the government to be in a position to
speak with and call former counsel, particularly in
light of its representation that in its opposition, Hey,
Judge, this is not a rookie.  This is a guy who's tried
and defended criminal cases pretty extensively.  So I
don't think that, Terry Gilbert, you can wiggle off the
hook of that problem by saying, Well, Judge, we won't
challenge his effectiveness, so long as you continue to
challenge the lawfulness of the taking of the proffer

10:08:42  1    itself.

10:08:46  2            MR. GILBERT:  Well, I think, you know, the

10:08:50  3    ultimate question is, to what extent is the waiver

10:08:58  4    diminished?  It can't be an open door policy, it seems

10:09:02  5    to me, in terms of every communication made between

10:09:06  6    Zubair and his prior lawyer.

10:09:08  7            THE COURT:  I think that is entirely fair

10:09:12  8    because the, quote, subject matter encompassed by the

10:09:16  9    waiver would be conversation relating to the proffer

10:09:28  10   itself and the process of the proffer, perhaps not even

10:09:30  11   the content of the proffer, but rather conversations as

10:09:38  12   to:  The government has offered to permit you to come in

10:09:44  13   to take a proffer.  This is what is involved.  This is

10:09:48  14   what a proffer is.  Whether he was told he didn't have

10:09:52  15   to do the proffer.  That sort of thing.  I mean, really

10:09:56  16   bearing on, quote, the ineffectiveness of

10:10:04  17   representation, going into the proffer itself, even

10:10:08  18   though the challenge may not be defined as such, I'm

10:10:12  19   just trying to define how I would view the, quote,

10:10:18  20   subject matter of any waiver.

10:10:22  21           MR. SOFER:  All I'll say about that, Judge,

10:10:24  22   is I don't necessarily disagree with the concept that

10:10:26  23   there would be some sort of potential limitation, but

10:10:32  24   this is going -- that, in and of itself, is going to be

10:10:34  25   sticky.  Just -- I am positing just one scenario.

10:10:40  1   But, I mean, if counsel had conversations with his

10:10:44  2   client, and his client chose to come in and tell the

10:10:50  3   government what he had done, and those conversations

10:10:56  4   relate to the substance of what was said, some of that's

10:11:00  5   going to be hard to excise, again, just because the

10:11:06  6   conversation would likely go something like:  Well, you

10:11:08  7   know, I did, this, this, this, and this, and what if I

10:11:12  8   tell them that?  Then counsel says, Well, this is done

10:11:14  9   under the following agreement, and I've done this many

10:11:18  10  times, and they can't use this against you in their

10:11:22  11  direct case against you at trial, but it's probably in

10:11:24  12  your interest to do that.  And he says, Okay, well, I

10:11:28  13  don't want to go to jail for such and such period of

10:11:30  14  time, but I also don't want to tell them I did this if

10:11:36  15  they'll think that's so terrible.  It's very likely

10:11:40  16  that these two concepts that -- and keep in mind the

10:11:42  17  government has the substance of what Zubair Ahmed said,

10:11:48  18  his inculpatory statements.  It's not as if we would

10:11:52  19  discover something new.  Nor do I think we obviously --

10:11:54  20  we could not use -- certainly could not use some new

10:11:58  21  statement, substantive statement made by the defendant

10:12:02  22  to his lawyer in the confines of the attorney/client

10:12:04  23  privilege.  We couldn't then call his lawyer, I don't

10:12:08  24  think, at trial and say:  Hey, by the way, did he also

10:12:10  25  say this?  That's not what the government's seeking to

10:12:14  1  do here.  We just want to be able to fully defend the

10:12:16  2  argument that somehow, as you say, there was a defect in

10:12:20  3  this process that causes suppression to be a potential

10:12:24  4  remedy.

10:12:24  5          THE COURT:  Let me ask you this.  This is

10:12:28  6  all in anticipation of Zubair's taking the stand,

10:12:34  7  testifying, and testifying in a way that differs from

10:12:40  8  what he said during the proffer, and thereby giving --

10:12:46  9  putting the proffer then in your hands for the first

10:12:48  10  time to use on cross-examination; is that correct?

10:12:50  11         MR. SOFER:  Well, Your Honor, that is an

10:12:52  12  excellent question.  And that ultimately is where I

10:12:56  13  think this is headed.  And when I described the train

10:13:00  14  wreck previously, that's the train wreck I'm most

10:13:04  15  worried about.  Actually, the proffer agreement is

10:13:06  16  drafted in way that is much more wide open in terms of

10:13:12  17  the government's ability to use particular statements.

10:13:16  18  Now, we are presently -- we believe counsel has already

10:13:18  19  stepped over that line a number of times, including in

10:13:22  20  the detention hearing where arguments are being

10:13:26  21  forwarded to the Court by counsel to or via his motions,

10:13:32  22  and they are in direct contravention of the statements

10:13:36  23  made by the client in the proffer, and that the

10:13:40  24  government should be able to now use the proffer

10:13:42  25  agreement.

10:13:44  1          Now, there is not -- I have to tell the

10:13:46  2    Court that the government is in the process internally

10:13:50  3    of working this out.   There are all kinds of policy

10:13:54  4    questions here for us internally before we would

10:13:56  5    formally -- I'm expressing my personal opinion about

10:14:00  6    this, not necessarily the opinion of -- formal opinion

10:14:02  7    of the government.   And so we need to work that out.

10:14:06  8    But there is a significant possibility at least that the

10:14:10  9    government could take the position that that line's

10:14:14  10   already been passed.   For instance, if counsel again --

10:14:16  11   I'll try to use this in a hypothetical --

10:14:20  12          THE COURT:   Can I interrupt because we --

10:14:22  13   I'm jamming up against at lot of other things I've got

10:14:26  14   to attend to this morning.   I understand all of that.

10:14:32  15   But I would also hope -- I mean, I trust that whoever's

10:14:34  16   making this decision understands, it seems to me, that

10:14:42  17   if the decision is made the wrong way, or one way, and I

10:14:48  18   say that's okay, in other words, you can introduce the

10:14:52  19   proffer and/or you can call the lawyer, the witness, or

10:14:56  20   whatever, all the different ways that this could unfold,

10:15:00  21   you know, aside from handing clearly a very substantial

10:15:04  22   issue on appeal, it does seem to me that that's the kind

10:15:10  23   of, depending how far I let you go with it, the kind of

10:15:16  24   thing that could undo the whole conviction and bring us

10:15:18  25   back unnecessarily.

| | |
|---|---|
| 10:15:22 | 1 |
| 10:15:24 | 2 |
| 10:15:26 | 3 |
| 10:15:28 | 4 |
| 10:15:32 | 5 |
| 10:15:36 | 6 |
| 10:15:42 | 7 |
| 10:15:44 | 8 |
| 10:15:50 | 9 |
| 10:15:54 | 10 |
| 10:15:56 | 11 |
| 10:16:00 | 12 |
| 10:16:04 | 13 |
| 10:16:06 | 14 |
| 10:16:10 | 15 |
| 10:16:18 | 16 |
| 10:16:24 | 17 |
| 10:16:28 | 18 |
| 10:16:34 | 19 |
| 10:16:36 | 20 |
| 10:16:40 | 21 |
| 10:16:46 | 22 |
| 10:16:52 | 23 |
| 10:16:56 | 24 |
| 10:17:00 | 25 |

MR. SOFER:  We absolutely --

THE COURT:  Excuse me.  I'm not quite done.
So you can point to this in the transcript if you want.
I do hope that the government -- I mean, I can't imagine
that all of this is that crucial to the government's
case in chief.  All right.  It's either got its case
without the lawyer and without the proffer, or it
doesn't.  And if it does, fine.  If it doesn't, well,
that's its choice, and it will have to go from there.
But I hope whoever's making this decision at whatever
level of the government isn't going to sort of test the
limits and the waters and see how far it can push it and
all of that.  Okay.  That's all.

What I would suggest is for now that we
anticipate -- well, let's put it this way.  I would like
the government to -- well, hold on a minute.  What I'd
like to do is forego having to address this issue by way
of hearing or otherwise on December 9 or 10, and if
necessary, I mean, it's a half day hearing; I can't
imagine it's going to take more than that.  And what I
would like to do is to leave this to anticipate that
this will not come up until such time as Zubair has
testified, and if necessary, I'll take the half day or
day or whatever it takes to tell you whether you can --
whether and what you can do on cross-examination or in

10:17:04  1    rebuttal when and if the time comes.   And unless the

10:17:12  2    government says, Judge, no, want this issue -- here's

10:17:16  3    what we want to do on direct in our case in chief,

10:17:20  4    regardless of whether he testifies, at which time I'll

10:17:24  5    find the time to hear the issue.

10:17:26  6              MR. SOFER:  That's fine, Judge.   Just to

10:17:28  7    respond to what you said earlier, we absolutely are

10:17:30  8    aware of the consequence of all of this and do not take

10:17:34  9    this lightly.   But we also believe that we should try,

10:17:40  10   to the extent possible, to resolve it pretrial because

10:17:42  11   you have a severance motion which relates to some extent

10:17:48  12   on the litigation of this issue, and there are other

10:17:50  13   implication of this issue as well.   And so we do think

10:17:52  14   it would be important to do a pretrial -- may I propose

10:17:56  15   the following alternative: That the government inform

10:18:02  16   the Court within the next week or ten days as to whether

10:18:08  17   we believe something other than the actual testimony of

10:18:16  18   Zubair Ahmed in contravention of statements he made at

10:18:20  19   the proffer is something that we would attempt to use in

10:18:24  20   our direct case.   That will tell you at least the

10:18:26  21   likelihood of this happening.   But I have to tell you,

10:18:30  22   Your Honor, I think even if we all come to an agreement,

10:18:32  23   which we may, that the only way that this could come up

10:18:36  24   is if Zubair Ahmed testifies, I still think the issue,

10:18:40  25   for instance, as to whether or not there's a Bruton

10:18:44  1  question should be litigated now because we can't sever

10:18:48  2  the case in the middle of the case.

10:18:50  3              THE COURT:  I understand that.  But that is

10:18:54  4  a different issue, and that's why I have you by December

10:18:56  5  2 submitting a redacted version, so we can address the

10:19:02  6  Bruton question, which is a separate question, if we

10:19:08  7  need to do so when we're together on the 9th and 10th.

10:19:16  8              MR. SLADE:  This is Mike Slade for Khaleel.

10:19:18  9  I actually think Mr. Sofer's proposal would be very

10:19:22  10  useful.   I agree with him 100 percent that we ought to

10:19:26  11  be resolving this pretrial.   And I do think it could

10:19:30  12  cut through a lot of the shaft if the government were to

10:19:32  13  make that decision whether anything other than Zubair

10:19:36  14  actually testifying contrary to the proffer would, in

10:19:40  15  the government's view, lead to its admission.   So I --

10:19:44  16  at least from our perspective, we'd like to take the

10:19:46  17  government up on that offer, if the Court thinks its

10:19:50  18  would be helpful.

10:19:50  19              MR. GILBERT:  Judge, from my standpoint, in

10:19:52  20  defending Zubair, obviously I don't want Mr. Sofer

10:19:58  21  jumping up in my opening statement and saying I've gone

10:20:00  22  over the line.

10:20:04  23              MR. SOFER:  That's right, Judge.   And

10:20:06  24  again, I think the frustration of the government

10:20:08  25  obviously is if Mr. Gilbert gets up in his opening

10:20:14  1  statement and makes a series of arguments to the jury

10:20:18  2  which fly directly in the face of the admissions of his

10:20:22  3  client during the proffer statement, absent somebody

10:20:26  4  from the government as a whole deciding that we can't do

10:20:30  5  it, it seems to me that it puts us in a very difficult

10:20:36  6  position without knowing the answer to that.

10:20:38  7          THE COURT:  Also -- excuse me, but let me

10:20:40  8  say this:  If that happens, number one, that depends --

10:20:50  9  back up.  First, I will be giving Mr. Gilbert the

10:20:56  10  choice whether to present an opening before the

10:21:00  11  government presents its case or at the conclusion of the

10:21:04  12  government's case.

10:21:04  13          Second, if he elects to present an opening

10:21:10  14  at the outset of trial, and if you believe he crosses

10:21:12  15  that line so that now you will be seeking to offer the

10:21:18  16  statement and other testimony perhaps in your case in

10:21:26  17  chief, again, it seams to me that we can address the

10:21:30  18  issue then.  I'll take the time necessary.  If it

10:21:32  19  means telling the jury to come back a day later than we

10:21:36  20  thought, I will do so.  But certainly you wouldn't be

10:21:42  21  getting any rebuttal opening opportunity at the

10:21:44  22  conclusion of his opening statement; you could approach

10:21:48  23  and say, Judge, he's triggered it.  Now we've got to

10:21:50  24  deal with it.  He may not.

10:21:50  25          (Several people speak at the same time.)

| | |
|---|---|
| 10:21:58 | 1 |
| 10:21:58 | 2 |
| 10:22:00 | 3 |
| 10:22:02 | 4 |
| 10:22:02 | 5 |
| 10:22:12 | 6 |
| 10:22:16 | 7 |
| 10:22:20 | 8 |
| 10:22:26 | 9 |
| 10:22:30 | 10 |
| 10:22:32 | 11 |
| 10:22:38 | 12 |
| 10:22:38 | 13 |
| 10:22:42 | 14 |
| 10:22:44 | 15 |
| 10:22:48 | 16 |
| 10:22:50 | 17 |
| 10:22:56 | 18 |
| 10:23:00 | 19 |
| 10:23:02 | 20 |
| 10:23:06 | 21 |
| 10:23:08 | 22 |
| 10:23:14 | 23 |
| 10:23:18 | 24 |
| 10:23:22 | 25 |

THE COURT: One person at a time.  Terry
Gilbert, is that you talking?

MR. GILBERT:  Yes.

We have been thinking about this, obviously,
for a long time.  And as you know, in our district the
language that was -- that kind of language is not in the
proffers.  So I think we're treading on some territory
that is unfamiliar.  But obviously I want to present an
ethical defense, and I don't want to do anything that's
going to harm my client.  So I think we need to know
before we start, not after the opening statement, what
the parameters of this is.

THE COURT:  Well, let me --

MR. SOFER:  I hate to find myself in
agreement with Mr. Gilbert, Your Honor, but we concur.
I think there is also a role for the Court potentially
in interpreting the proffer statement.  Let's say the
government took a more aggressive position and said we
think he's already -- or during an opening statement
that he's gone over the line.  The Court may take a
look at this document -- which is a contract,
essentially -- and interpret it differently.  But I
think the first step is the government getting its
decision to all parties.  And I would agree that's on
us to do.

10:23:24  1          THE COURT:  Let me interrupt.   Excuse me.

10:23:26  2   I've just typed the following:  Government to notify the

10:23:30  3   Court and counsel by December 2 what use, if any, it

10:23:32  4   anticipates making of defendant Zubair Ahmed's proffer

10:23:36  5   prior to his testimony.

10:23:36  6          MR. SOFER:  That's fine, Judge.  We can do

10:23:40  7   that.  And we'll --

10:23:40  8          THE COURT:  Wait a minute, please.  And

10:23:42  9   what I will do then is -- what I would anticipate would

10:23:48 10   be making a decision when we're together on the 9th and

10:23:54 11   perhaps the 10th as to whether I need to or anybody

10:24:00 12   wants me to hold a further hearing only on this issue

10:24:08 13   during the second week of January.  I will simply find

10:24:12 14   the time then to do that.  I mean, until we know what

10:24:16 15   the government anticipates doing, Mr. Gilbert doesn't

10:24:20 16   know what he likely to do in terms of formulating his

10:24:22 17   own opening statement, much less when he's likely to

10:24:26 18   present it.  And that does seem -- let's assume the

10:24:30 19   government says, Judge, we're not going to push this

10:24:32 20   issue.  We will not, unless there's a trigger pulled by

10:24:40 21   Mr. Gilbert in his opening statement, we presently do

10:24:46 22   not anticipate offering the proffer or anything relating

10:24:50 23   to the proffer until such time as Zubair testifies.   So

10:24:56 24   we can push the whole thing off.  Concurrently, on the

10:25:00 25   2nd we will also have the redacted, certainly, which can

| | | |
|---|---|---|
| 10:25:06 | 1 | affect the Bruton issue, which is the basis, I believe, |
| 10:25:12 | 2 | Mr. Slade, for the severance motion. |
| 10:25:18 | 3 | MR. SLADE:  It's one of them, Judge, you're |
| 10:25:20 | 4 | right. |
| 10:25:20 | 5 | THE COURT:  And what else is there?  Remind |
| 10:25:24 | 6 | me. |
| 10:25:24 | 7 | MR. SLADE:  There are certain other |
| 10:25:26 | 8 | statements that we think are problematic that aren't |
| 10:25:28 | 9 | proffered statements by Zubair. |
| 10:25:30 | 10 | THE COURT:  Are those the interview |
| 10:25:32 | 11 | statements, the three interview statements, or are there |
| 10:25:36 | 12 | others? |
| 10:25:36 | 13 | MR. SLADE:  There's certain e-mails and |
| 10:25:38 | 14 | phone calls between Zubair and -- |
| 10:25:42 | 15 | THE COURT:  Sayed Ahmed? |
| 10:25:44 | 16 | MR. SLADE:  Exactly, Judge. |
| 10:25:46 | 17 | THE COURT:  Well, again.  Let me do this. |
| 10:25:50 | 18 | I'm going to say government to provide proposed redacted |
| 10:25:54 | 19 | versions of Defendant Zubair Ahmed's proffer statement |
| 10:26:00 | 20 | and other statements by the -- |
| 10:26:16 | 21 | MR. SOFER:  Your Honor, may I interrupt?  I |
| 10:26:18 | 22 | apologize.  Those statements, that's a separate |
| 10:26:22 | 23 | legal -- a completely separate legal issue. |
| 10:26:26 | 24 | THE COURT:  Those you're going to be |
| 10:26:26 | 25 | offering as coconspirator's statements? |

| | | |
|---|---|---|
| 10:26:30 | 1 | MR. SOFER:  Exactly, Your Honor. |
| 10:26:30 | 2 | THE COURT:  All right.  Then I'll deal with |
| 10:26:32 | 3 | that in due course.  That's just -- I mean, those, I |
| 10:26:36 | 4 | can't rule on those until we get to trial anyway. |
| 10:26:40 | 5 | But so my question, Mr. Slade, is:  The |
| 10:26:42 | 6 | principle basis or a cornerstone/keystone basis for |
| 10:26:48 | 7 | severance of Khaleel is the proffer? |
| 10:26:52 | 8 | MR. SLADE:  That is a cornerstone.  I also |
| 10:26:56 | 9 | believe, Judge, we've argued in our motion that the |
| 10:26:58 | 10 | government's intent to introduce those statements do |
| 10:27:02 | 11 | provide a basis for severance as an initial matter |
| 10:27:04 | 12 | because of the effect they would have on Khaleel. |
| 10:27:08 | 13 | THE COURT:  Well, that's more of a 401/403 |
| 10:27:10 | 14 | argument rather than the coconspirator argument; am I |
| 10:27:14 | 15 | correct? |
| 10:27:14 | 16 | MR. SLADE:  They're not admissible under the |
| 10:27:18 | 17 | coconspirator exception under Khaleel. |
| 10:27:20 | 18 | THE COURT:  Is that the government's |
| 10:27:22 | 19 | viewpoint? |
| 10:27:24 | 20 | MR. SLADE:  The government disagrees. |
| 10:27:26 | 21 | MR. SOFER:  We briefed this, Your Honor.  We |
| 10:27:28 | 22 | believe they are admissible under the coconspirator |
| 10:27:30 | 23 | statement, ultimately much like the Amawi case or any |
| 10:27:34 | 24 | other large-scale conspiracy case, these statements are |
| 10:27:40 | 25 | admissible once a conspiracy has been established. |

10:27:44  1   They are also potentially usable to establish, in part,

10:27:50  2   that a conspiracy exists.  And so, I mean, I don't

10:27:56  3   know -- I know what the Court's practice was in the

10:27:58  4   Amawi case; the government went forward with its case.

10:28:02  5   There was -- there came a time somewhere in the

10:28:04  6   beginning of the trial where it was clear that a

10:28:08  7   conspiracy had been established.  We think you can take

10:28:10  8   a look at the evidence that's been submitted already

10:28:14  9   just to the Court by the parties that it's clear that it

10:28:20  10  makes out already at least a prima facie case that

10:28:24  11  there's a conspiracy that involves these three men.

10:28:30  12  Again, there are courts which have long hearings prior

10:28:34  13  to trial to -- where the government has to establish the

10:28:36  14  existence of a conspiracy.  But that's certainly not

10:28:40  15  what we did in the Amawi case.   And that would take a

10:28:44  16  fairly long period of time for us to sort of go forward

10:28:46  17  with a big chunk of our case prior to trial in order to

10:28:50  18  show that these are, in fact, coconspirator statements.

10:28:54  19  But again, I think the Court already has enough

10:28:56  20  information before it to find that there's a credible

10:28:58  21  argument for that and that counsel's motion to sever the

10:29:02  22  case at this time is inappropriate.

10:29:04  23          MR. SLADE:  Your Honor, we're going to file

10:29:06  24  our reply brief today on that.

10:29:08  25          THE COURT:  That's fine.   I'll look at it,

10:29:10  1   and we can talk about this further on the 9th.   I don't

10:29:14  2   think we need a hearing on that right now.   But we can

10:29:16  3   talk about it on the 9th.   Okay?

10:29:20  4                 MR. SLADE:  I agree, Judge.   Thank you.

10:29:26  5                 THE COURT:  Document 57, which is Zubair's

10:29:34  6   motion to suppress his oral statements -- hold on one

10:29:48  7   minute.   And that also -- there's also, I assume, Terry

10:29:54  8   Gilbert, you have -- you think you have moved or would

10:29:58  9   move orally to suppress the e-mail from his desk during

10:30:02  10  one of the interviews?

10:30:02  11                MR. GILBERT:  Yes, I think we did raise

10:30:04  12  that.

10:30:04  13                THE COURT:  I think the government was a

10:30:06  14  little uncertain about that.

10:30:08  15                MR. GILBERT:  If not, we will.

10:30:10  16                THE COURT:  But I do think we need a hearing

10:30:12  17  for the reasons indicated.   That's document number 57.

10:30:22  18                Now, with regard to documents 58 and 63, the

10:30:30  19  motion to suppress the searches.

10:30:38  20                MR. SLADE:  Your Honor, as far as Khaleel's

10:30:40  21  motion, our reply brief is going to be filed today.   I

10:30:42  22  think we are and the government are in agreement that

10:30:44  23  there's no evidence required.   It's really on the face

10:30:50  24  of the affidavit.

10:30:52  25                THE COURT:  Okay.

| | |
|---|---|
| 10:31:06 | 1 |
| 10:31:08 | 2 |
| 10:31:12 | 3 |
| 10:31:16 | 4 |
| 10:31:20 | 5 |
| 10:31:22 | 6 |
| 10:31:24 | 7 |
| 10:31:30 | 8 |
| 10:31:34 | 9 |
| 10:31:38 | 10 |
| 10:31:38 | 11 |
| 10:31:40 | 12 |
| 10:31:42 | 13 |
| 10:31:46 | 14 |
| 10:31:48 | 15 |
| 10:31:52 | 16 |
| 10:31:58 | 17 |
| 10:32:00 | 18 |
| 10:32:02 | 19 |
| 10:32:04 | 20 |
| 10:32:06 | 21 |
| 10:32:08 | 22 |
| 10:32:08 | 23 |
| 10:32:14 | 24 |
| 10:32:22 | 25 |

1    MR. SLADE:  Zubair's motion, that's one I
2 believe we do need some evidence on, in particular the
3 part to suppress the evidence that was found in
4 Khaleel's -- the basement of Khaleel's house.
5    THE COURT:  That's a standing issue?
6    MR. SLADE:  No, it's not a standing issue.
7 The question is whether the government had authority to
8 go into the basement of Khaleel's house because that's
9 not part of the house that's occupied or controlled by
10 his family.
11    THE COURT:  I thought the government was
12 contending Zubair had no standing.
13    MR. SLADE:  No.  Is that an argument the
14 government's raising?
15    MR. SOFER:  Right.  But I do think we, in
16 any event -- also, I gather, you're suggesting even --
17 assuming he has standing, then it's a question of
18 whether or not that was within the scope of the warrant?
19    MR. SLADE:  That's correct, Judge.
20    THE COURT:  And we do need a hearing on
21 that, right?
22    MR. SOFER:  Here, Your Honor, I guess --
23 this is Greg Sofer -- I think the question is, I
24 believe, that Zubair argued that Khaleel's family told
25 the executing agents that a particular area of the home

10:32:28  1   was off limits, essentially that they did not have

10:32:32  2   access to it.  I assume then that the first witnesses in

10:32:38  3   this hearing will be those called by the defense to

10:32:42  4   establish that, and the government will have an

10:32:44  5   opportunity to cross-examine them, then call whatever

10:32:46  6   witnesses we wish to rebut that argument.  But absent

10:32:52  7   that factual issue there, I don't believe anyone's

10:32:54  8   arguing -- someone tell me if I'm wrong -- that there

10:32:58  9   was anything inappropriate about the search other than

10:33:00  10  that which has been briefed and does not require a

10:33:02  11  hearing.

10:33:04  12          MR. SLADE:  This is Mike Slade.  I think

10:33:06  13  Mr. Sofer is right.  So Zubair --

10:33:12  14          MR. SOFER:  So Zubair will call members --

10:33:14  15  somebody as a witness who was there at the execution of

10:33:18  16  the warrant who will testify:  Hey, we told the agents,

10:33:20  17  you can't go in there.  And that will -- and the

10:33:24  18  government should be able to cross-examine those

10:33:26  19  witnesses.  And if we choose then would call the

10:33:28  20  witnesses who executed the search to say otherwise.

10:33:32  21          THE COURT:  Okay.  But anyway, we need a

10:33:34  22  hearing as to standing and the authority to enter the

10:33:38  23  basement?

10:33:40  24          MR. SOFER:  I believe that's correct, Judge.

10:33:42  25          THE COURT:  Okay.  And we do not need a

| | |
|---|---|
| 10:33:46 | 1 |
| 10:33:52 | 2 |
| 10:33:56 | 3 |
| 10:34:02 | 4 |
| 10:34:04 | 5 |
| 10:34:08 | 6 |
| 10:34:12 | 7 |
| 10:34:16 | 8 |
| 10:34:22 | 9 |
| 10:34:24 | 10 |
| 10:34:24 | 11 |
| 10:34:26 | 12 |
| 10:34:28 | 13 |
| 10:34:30 | 14 |
| 10:34:34 | 15 |
| 10:34:36 | 16 |
| 10:34:38 | 17 |
| 10:34:40 | 18 |
| 10:34:46 | 19 |
| 10:34:50 | 20 |
| 10:34:50 | 21 |
| 10:34:52 | 22 |
| 10:34:54 | 23 |
| 10:34:58 | 24 |
| 10:34:58 | 25 |

hearing as to document 63, which is Khaleel's motion, once the reply is filed today?

MR. SLADE:  That's correct, Judge.

THE COURT:  Just one more time, we do need a hearing as to document 57, Zubair's motion to suppress oral statements?  That hearing, though, as far as the 9th would be concerned would be limited to the three interviews; is that correct, Mr. Slade?

MR. GILBERT:  It would be Mr. Gilbert.

THE COURT:  I'm sorry.

MR. GILBERT:  You're absolutely right.

THE COURT:  Fine.  I just want to know that.

Zubair's motion to dismiss, you're going to be filing a reply on that.  Is that due today?

MR. GILBERT:  I don't think we're going to file a reply on that, Judge.

THE COURT:  So it's decisional now.  If I want an argument, I'll let you know in advance of the hearing.  Okay?

MR. GILBERT:  Okay.

THE COURT:  The motion to change venue.

MR. SLADE:  Your Honor, our reply will be filed today.  It's due today.

THE COURT:  I have a question for you,

10:35:00  1   though.    And let me preface it by saying I remain both

10:35:06  2   unenthusiastic and unpersuaded that a change of venue is

10:35:14  3   necessary, at least until we start the voir dire process

10:35:20  4   and find out whether or not we can find jurors, A, who

10:35:26  5   may have been unaware of the prior trial.    And my past

10:35:30  6   experience in similar situations suggests to me, as

10:35:34  7   remarkable as it might seem, that there will be a fair

10:35:36  8   number of people in the venire who are unaware of it or

10:35:40  9   who have only a passing awareness, a shallow awareness.

10:35:46  10  That being said, I notice that your -- am I correct that

10:35:54  11  the exhibits are all from the -- are from print media;

10:36:00  12  namely, The Blade.

10:36:02  13            MR. SLADE:   That's correct, Judge.

10:36:04  14            THE COURT:   Well, let me suggest to you,

10:36:04  15  again, in the interest of perfecting the record, I was

10:36:08  16  told -- I don't watch television.   Our TV only gets two

10:36:14  17  stations, and neither of them is Fox news, which I

10:36:18  18  wouldn't watch anyway, but somebody mentioned to me

10:36:20  19  during the course of the trial in Amawi that the Fox

10:36:26  20  News account, they would report on what was going on.

10:36:32  21            MR. SLADE:   Yeah, we're aware of that,

10:36:36  22  Judge.   There was a local -- in Toledo there was an

10:36:38  23  update on Fox News every night.    Quite frankly, the

10:36:42  24  reason that we didn't put it in the initial papers is we

10:36:46  25  couldn't locate actual evidence of that that we could

10:36:50  1    print out and attach to the brief.

10:36:52  2         THE COURT:  Well, I'm just trying to give

10:36:54  3    you the opportunity to perfect the record.   I mean, I'm

10:36:58  4    being very candid with you, even despite that, I'm

10:37:02  5    disinclined to grant the motion for change in venue.

10:37:04  6    But I think it's important, I mean what is it, 85

10:37:08  7    percent of what people, quote, learn about the news they

10:37:12  8    get from broadcast media, principally TV.   And I'm told

10:37:16  9    that Fox News -- I don't know who told me this; it was

10:37:20  10   some point during Amawi that they would have a picture

10:37:24  11   of the twin towers on fire then would say -- "Terror in

10:37:28  12   Toledo" would be the lead-in, and then they'd have some

10:37:30  13   snippet about what the case was about.   And if you want

10:37:34  14   to subpoena Fox or do whatever you want to supplement

10:37:38  15   the record, I'm perfectly content to let you do it.

10:37:42  16        MR. SLADE:  We appreciate that, Judge.

10:37:42  17   Thanks.

10:37:44  18        THE COURT:  I'll give you leave, let's say

10:37:46  19   until -- to defendant -- defendants to supplement

10:37:56  20   motions to change venue by December 2.   Okay.

10:38:04  21        MR. SLADE:  That's great, Judge.   Thank

10:38:10  22   you.

10:38:10  23        THE COURT:  And otherwise, I don't think any

10:38:12  24   hearing is needed on that.

10:38:16  25        MR. SLADE:  We agree, Judge.

10:38:26  1          THE COURT:  Mr. Sofer, maybe we can talk

10:38:28  2   about if they supplement it, what do we do in terms of

10:38:34  3   response from the government on the 9th?

10:38:36  4          MR. SOFER:  All I remember, Your Honor, is

10:38:38  5   reading articles that were not good for the government

10:38:42  6   until the end.   That's my selective memory, perhaps.

10:38:52  7          THE COURT:  I'm just making a note.

10:38:58  8          Who's speaking please?

10:38:58  9          MR. TERESINSKI:  Jerry Teresinski, Your

10:39:00  10  Honor.   How are you?

10:39:02  11         THE COURT:  Fine.

10:39:02  12         MR. TERESINSKI:  I'm not interrupting; I

10:39:04  13  just have to go; I have a doctor's appointment.

10:39:06  14         THE COURT:  No problem.

10:39:32  15         (Discussion had off the record.)

10:39:32  16         THE COURT:  Khaleel's motion to suppress, I

10:39:34  17  already talked about that.   And government's motion.

10:39:42  18  This is the last one on my stack, 81, on the waiver of

10:39:46  19  the attorney/client privilege.   And on I'm

10:39:52  20  punting/finessing that for now, okay, as indicated in

10:39:54  21  our earlier discussion.

10:39:58  22         MR. GILBERT:  Your Honor, I think we were

10:40:00  23  supposed to talk about the jury questionnaire today.

10:40:02  24  And I have a proposal.   I know the government has

10:40:04  25  received, and Mike can talk about this further, but I

10:40:08  1  think the government has received our proposed

10:40:12  2  questionnaire.  Is that correct?

10:40:14  3          MR. GETZ:  Yes.  This is Tom Getz.  We have

10:40:18  4  received those.  And I'm going to begin reviewing those

10:40:22  5  today.

10:40:22  6          MR. GILBERT:  Judge, I was going to ask,

10:40:24  7  though, since we have to be in Toledo the 9th and 10th

10:40:26  8  that we could talk about the questionnaire then, and we

10:40:30  9  would have our expert, Mr. Guastaferro, come in and be

10:40:34  10  available.

10:40:36  11          THE COURT:  Okay.  I think that makes

10:40:44  12  sense.  Let me now -- Amy, what's going on?  You told

10:40:50  13  me earlier this morning Annie is sending out what?

10:40:54  14          THE CLERK:  She will need to send out the

10:40:58  15  prescreenings to jurors and give them about six weeks at

10:41:00  16  least, like she did in Amawi.  She sent out 1,500

10:41:04  17  summons.  She could get at least 500 jurors here.

10:41:06  18          THE COURT:  Have you people seen the

10:41:08  19  prescreening questionnaire that goes out?

10:41:12  20          MR. SLADE:  Yeah, I have not seen it.

10:41:14  21          THE COURT:  Can you get that to counsel?

10:41:16  22  Counsel, if you'll -- how soon does Annie want to send

10:41:24  23  that stuff out?

10:41:24  24          THE CLERK:  I think by the end of November.

10:41:56  25          THE COURT:  Is that the one that was

| | |
|---|---|
| 10:41:58 | 1 |
| 10:42:00 | 2 |
| 10:42:02 | 3 |
| 10:42:12 | 4 |
| 10:42:14 | 5 |
| 10:42:16 | 6 |
| 10:42:20 | 7 |
| 10:42:24 | 8 |
| 10:42:26 | 9 |
| 10:42:32 | 10 |
| 10:42:34 | 11 |
| 10:42:36 | 12 |
| 10:42:40 | 13 |
| 10:42:44 | 14 |
| 10:42:48 | 15 |
| 10:42:50 | 16 |
| 10:42:52 | 17 |
| 10:42:56 | 18 |
| 10:43:00 | 19 |
| 10:43:04 | 20 |
| 10:43:06 | 21 |
| 10:43:08 | 22 |
| 10:43:10 | 23 |
| 10:43:14 | 24 |
| 10:43:16 | 25 |

1  homemade or standard?

2          THE CLERK:  Standard.  District standard

3  form.

4          THE COURT: I'm going to have you give me

5  comments, if any.  Can she wait until the week of

6  December 2?

7          THE CLERK:  I would think so.

8          THE COURT:  Clerk to provide counsel with

9  prescreening juror questionnaire forthwith.  Counsel to

10  provide comments, if any, by December 2.

11          Counsel, what I want you to do is if you can

12  agree on a, quote, homemade or specific questionnaire,

13  that's fine.  Okay.  It should be very -- it shouldn't

14  be very long.  How long is the one that we use now?

15          THE CLERK:  Actually, Judge, I think what

16  goes out to them is where they can just return it saying

17  that they're exempt or they have a medical excuse.  I

18  think that that's -- I think it's just a one-page

19  governmental perforated form that they pull apart and

20  send back.

21          THE COURT:  I'm going to leave this alone.

22  We used it before in Amawi, and it worked.  You can

23  send it to them if you want, Amy, but, I mean, if

24  there's some real yelling and screaming that's to be

25  done, let Amy and everybody else know as soon as

10:43:20  1  possible so we can talk about it if necessary towards

10:43:24  2  the end of this week or next week.   All right.

10:43:30  3           MR. SLADE:  That would be great.  Amy, if

10:43:32  4  you can get that to us -- actually, our jury consultant

10:43:36  5  is going to be here this afternoon.   I doubt there's

10:43:38  6  going to be yelling and screaming.

10:43:40  7           THE COURT:  I think it's a standard form.  I

10:43:42  8  think we use it -- it's just the ordinary government

10:43:46  9  issued form, whatever it says and does.   Okay.

10:43:54  10 Anything else we have to talk about?

10:43:58  11          MR. SOFER:  Not that I'm aware of, Your

10:44:00  12 Honor.  This is Greg Sofer.

10:44:00  13          THE COURT:  So why don't you tell me, let me

10:44:02  14 make sure I know what work I've got -- is ready to be

10:44:08  15 done.   Khaleel's motion to suppress will be decisional

10:44:14  16 with the filing of the reply, correct?

10:44:16  17          MR. SLADE:  That's correct.

10:44:24  18          THE COURT:  Okay.  Zubair's motion to

10:44:30  19 dismiss is decisional.

10:44:42  20          The motion to take testimony overseas is

10:44:46  21 decisional; that's document 72, it looks like.

10:44:56  22          The hearing on the 9th will include Zubair's

10:45:02  23 challenge to the interview, the three interviews.

10:45:08  24          The challenge to the proffer I'm going to

10:45:10  25 hold in abeyance doing anything on for further filing by

10:45:16   1   the government and discussion on the 9th.

10:45:22   2          The FISA motion will be decisional on the

10:45:26   3   15th of December.   That's document 56.

10:45:34   4          The motion for severance I'm basically

10:45:36   5   holding in abeyance pending further discussion on the

10:45:42   6   9th after the government responds to today's order.

10:45:58   7   Okay.  Hold on one second.

10:46:08   8          Zubair's motion to suppress will be heard on

10:46:18   9   the 9th as to standing and authority/scope or whatever

10:46:24  10   of the search.   Right?

10:46:28  11          MR. SOFER:  Yes, Judge.

10:46:30  12          THE COURT:  Okay.  Khaleel's motion to

10:46:32  13   change venue will be supplemented, if you want to

10:46:36  14   supplement it, by the 2nd.

10:46:38  15          And we will discuss whether we need further

10:46:42  16   briefing, et cetera, on the 9th.   Okay.

10:46:52  17          MR. SLADE:  Yes, Your Honor.

10:46:52  18          MR. GILBERT:  Judge, what would be the order

10:46:54  19   of the hearings on the 9th and 10th.

10:46:58  20          THE COURT:  I assume -- it looks to me like

10:47:00  21   we can get everything done on the 9th.   As far as I can

10:47:04  22   tell, we've got the two hearings.   It's basically you

10:47:06  23   that are going to be having the hearings.   And why

10:47:10  24   don't you -- I think you have to -- you've got the

10:47:12  25   burden of going forward.  So why don't you let the

| | | |
|---|---|---|
| 10:47:18 | 1 | government and everybody else know whom you're going to |
| 10:47:22 | 2 | be calling and when you plan to call them. |
| 10:47:24 | 3 | MR. GILBERT:  Okay. |
| 10:47:26 | 4 | MR. SOFER:  One thing that would smooth |
| 10:47:28 | 5 | things along for us would be any witnesses called by the |
| 10:47:30 | 6 | defense, if we could at least get their dates of birth |
| 10:47:34 | 7 | and place of birth as far in advance of the hearing as |
| 10:47:38 | 8 | possible, it would be much appreciated. |
| 10:47:40 | 9 | THE COURT:  Okay. |
| 10:47:42 | 10 | MR. SOFER:  Obviously if either of the |
| 10:47:44 | 11 | defendants testify, we may have dates of birth.  We may |
| 10:47:48 | 12 | have dates of birth of other people.  But at least if |
| 10:47:50 | 13 | you could give us a list of witnesses testifying. |
| 10:47:54 | 14 | MR. GILBERT:  Would you give us a list of |
| 10:47:56 | 15 | dates of birth of your witnesses? |
| 10:47:58 | 16 | MR. SOFER:  I don't think so. |
| 10:48:00 | 17 | MR. KERGER:  Why should we give you -- |
| 10:48:02 | 18 | THE COURT:  So they can run a record check, |
| 10:48:04 | 19 | right, Greg Sofer? |
| 10:48:04 | 20 | MR. SOFER:  That's exactly right, Judge. |
| 10:48:08 | 21 | THE COURT:  That's all.  Okay.  Anything |
| 10:48:10 | 22 | else we have to talk about? |
| 10:48:12 | 23 | MR. GETZ:  Tom Getz.  Just quickly, since |
| 10:48:14 | 24 | I've been in trial, I want to confirm with counsel that |
| 10:48:16 | 25 | they received copies of our translations and |

10:48:20  1   transcriptions, our draft, and get some idea of if we

10:48:24  2   will be getting back any proposed changes or --

10:48:30  3           MR. SLADE:  Actually, Mr. Getz, I'm glad you

10:48:32  4   brought that up.  Our translators are working through

10:48:34  5   it.  I may -- and there's likely to be some issues, not

10:48:38  6   a ton.  But I may need more time.  Our deadline right

10:48:42  7   now is the end of this month.  I'm hoping to get it to

10:48:46  8   you then.  But I'll be in touch with you in the near

10:48:50  9   future about the plans.

10:48:50  10          MR. GETZ: You're not seeing any major

10:48:52  11  problems or issues at this point?

10:48:54  12          MR. SLADE:  Nothing major.  But I think

10:48:56  13  we're going to have some issues to talk through.

10:49:00  14          THE COURT:  Well, you guys can talk with

10:49:00  15  each other.  Okay.

10:49:02  16          MR. SLADE:  Our hope is to work everything

10:49:04  17  out with the government well in advance of the trial

10:49:08  18  about the translation and on the translation and

10:49:10  19  transcription front.

10:49:12  20          THE COURT:  To the extent you're a little

10:49:16  21  late in getting that stuff to them, you don't need a

10:49:18  22  further order or whatever -- well, I'll tell you what

10:49:20  23  I'll do.  Leave granted to defendants to provide -- to

10:49:42  24  respond to government's proposed translations and

10:49:52  25  transcripts by December 15.  Okay?

| | | |
|---|---|---|
| 10:49:58 | 1 | MR. SLADE:  Appreciate that, Judge.  Thank |
| 10:50:00 | 2 | you. |
| 10:50:00 | 3 | THE COURT:  No problem.  In light of what |
| 10:50:00 | 4 | you're saying, it sounds like that's not going to cause |
| 10:50:04 | 5 | a problem.  If it does, it does.  Such is life. |
| 10:50:06 | 6 | Okay.  Anything else? |
| 10:50:10 | 7 | MR. SOFER:  To the extent the government |
| 10:50:12 | 8 | would want to see you ex parte pursuant to CIPA, can you |
| 10:50:14 | 9 | just give us an idea what your schedule is like over the |
| 10:50:18 | 10 | next several weeks? |
| 10:50:20 | 11 | THE COURT:  Yes.  This Friday I'm leaving |
| 10:50:24 | 12 | for Thanksgiving week, will be back in the office |
| 10:50:30 | 13 | Monday, December 1.  And I will be in the office and |
| 10:50:34 | 14 | available until probably about the 19th or 20th of |
| 10:50:38 | 15 | December.  And then I will be out of the office until |
| 10:50:42 | 16 | January 12. |
| 10:50:46 | 17 | MR. SOFER:  Very well. |
| 10:50:48 | 18 | THE COURT:  If for some reason I will be -- |
| 10:50:50 | 19 | during both of those periods I will be either outside of |
| 10:50:54 | 20 | New York City -- actually, the week before Christmas and |
| 10:50:58 | 21 | through Christmas I'll be in Louisville, and the week |
| 10:51:04 | 22 | after Christmas and the first week of the New Year's I |
| 10:51:06 | 23 | will be either in Boston or New York. |
| 10:51:12 | 24 | MR. SOFER:  We were hoping for Hawaii, Your |
| 10:51:14 | 25 | Honor. |

```
10:51:14   1              THE COURT:  Sorry about that.   My kids
10:51:18   2   moved far away, but they all stayed north.
10:51:22   3              MR. SOFER:  Very well.
10:51:22   4              THE COURT:  I can't imagine you would need
10:51:24   5   to see me, but if you did, my office can get a hold of
10:51:26   6   me, and you're more than welcome to do so if it's that
10:51:30   7   important or crucial.
10:51:30   8              MR. SOFER:  I'm confident we will not bother
10:51:34   9   you on your vacation, Judge.
10:51:36  10              THE COURT:  And then starting on January 12
10:51:38  11   when I'm back in the office, I plan -- I'm here for the
10:51:44  12   duration.
10:51:50  13              MR. SOFER:  For the trial, Your Honor, will
10:51:52  14   it also be Mondays off again?
10:51:54  15              THE COURT:  Right.   Two things about the
10:51:56  16   trial.   One is that I would expect the same
10:52:04  17   four-day-a-week sessions that we had with Amawi.   As
10:52:12  18   Tom Getz can relate what was for him an unhappy
10:52:16  19   experience in this El-Hindi trial last week, all
10:52:22  20   exhibits I will withhold ruling on admissibility of
10:52:26  21   exhibits, unless specifically I have to rule on
10:52:30  22   admissibility due to some evidentiary objection, until
10:52:34  23   completion of each party's case.   In other words, it's
10:52:38  24   neither necessary nor do I want you to move an exhibit's
10:52:42  25   admission unless there's been an objection and a ruling.
```

| | | |
|---|---|---|
| 10:52:46 | 1 | That requires the decision as to whether to admit or to |
| 10:52:50 | 2 | exclude, but that way people can go through everything |
| 10:52:56 | 3 | with Amy before you formally rest, make sure |
| 10:53:00 | 4 | everything's been admitted. |
| 10:53:00 | 5 | The other thing is in the El-Hindi case, for |
| 10:53:06 | 6 | various reasons, instead of trying the case in the space |
| 10:53:10 | 7 | of two or three days, it took about -- it took more than |
| 10:53:16 | 8 | a week because the government kept running out of |
| 10:53:18 | 9 | witnesses.  I know we did that a bit with Amawi.  And |
| 10:53:20 | 10 | I want to make real clear I don't want that to happen in |
| 10:53:26 | 11 | this case.  I don't want to be adjourning at 3:00 |
| 10:53:32 | 12 | because we're out of witnesses, or 2:00, or whatever. |
| 10:53:36 | 13 | So as you schedule your witnesses, I will expect you to |
| 10:53:40 | 14 | have witnesses available up until 4:30 or 5:00 every |
| 10:53:46 | 15 | day.  If it means inconvenience for witnesses, that's |
| 10:53:50 | 16 | too bad, because it's really a major inconvenience for |
| 10:53:52 | 17 | me in terms of my own ability to adjust and work my own |
| 10:53:56 | 18 | schedule not to have a full trial day.  Okay. |
| 10:54:04 | 19 | MR. GILBERT:  Okay. |
| 10:54:06 | 20 | THE COURT:  Anything else from the |
| 10:54:06 | 21 | government? |
| 10:54:08 | 22 | MR. SOFER:  Not me, Your Honor.   Greg |
| 10:54:12 | 23 | Sofer. |
| 10:54:12 | 24 | MR. GETZ:  Nor from Tom Getz. |
| 10:54:12 | 25 | THE COURT:  Express our collective |

10:54:14   1   congratulations to Mr. Herdman and his new family.

10:54:18   2             We all hope it goes well for your wife and

10:54:20   3   your family, Greg Sofer.

10:54:22   4             And in the meantime, everybody have a

10:54:24   5   pleasant Thanksgiving.

10:54:26   6             MR. GILBERT:  Thank you, Judge.

10:54:28   7             MR. SOFER:  Thank you, Judge.

10:54:28   8             THE COURT:  I'll see you all well nourished

10:54:30   9   and refreshed on the 9th of December.   If you want a

10:54:34  10   transcript, ask for Tracy.   Thanks.

          11                         - - -

          12                 C E R T I F I C A T E

          13

          14      I certify that the foregoing is a correct transcript

          15   from the record of proceedings in the above-entitled

          16   matter.

          17

          18   /s Tracy L. Spore_____          _____

          19   Tracy L. Spore, RMR, CRR                 Date

          20

          21

          22

          23

          24

          25